THE LAFAYETTE PLANKROAD COMPANY *v.* THE NEW AL-
BANY AND SALEM RAILROAD COMPANY.

*Quære,* whether the fact, that a juror sitting upon a trial is not a householder, is sufficient ground for a new trial, where the party asking the new trial was ignorant of the fact at the trial.

The fact that a juror sitting upon a trial is ignorant of the *English* language, is sufficient ground for granting a new trial.

The failure to examine the juror upon this point before accepting him, cannot be imputed as negligence. It may be presumed that the officer has called a jury competent in this respect.

The fact of such incompetence may be proven by the juror's statement under oath, without a violation of the rule that jurors are incompetent to impeach their verdicts.

The grant of a charter for a road, a bridge, or a ferry, does not estop the legislature from granting a subsequent charter for a road, bridge, or ferry, which may compete with the former in the transportation of freight and passengers between given points; and the mere fact that the two run parallel, and mutually diminish the business of each other, is no ground for a claim by either for damages.

The ground occupied by an existing company, or their franchise, may be taken, if authorized by the legislature, by a subsequently chartered company, upon making compensation.

Where any part of the road-bed or track of an existing company, or the property of an individual is taken, so that a proceeding under the statute may be had for the assessment of damages, all the damages occasioned by the taking, both to the ground and franchise, must be assessed and recovered in the statutory proceeding.

The appraisal of land damages, is a bar to claims for injuries by fire from engines, obstructing access to buildings, exposing persons or cattle to injury, cutting off the flowage of water, &c., even though such damages were unknown to the appraisers at the time of the assessment.

But where no part of the property of an existing company, or of an individual, is taken, unless the statute plainly authorizes a proceeding to assess damages for consequential injuries, such damages may be recovered in an ordinary action at law.

In the construction of the work for which the property of another is taken, reasonable care and skill must be exercised, or the party will be liable to an action for the tort, as at common law.

In an action in the nature of an action on the case to recover such damages, it may be presumed that the plaintiff had claimed and recovered under the statute, such damages as the location selected would occasion.

A party proceeding under the statute to recover such damages, may have an injunction till the damages are paid; and, perhaps, to control the location. In the proceeding for the assessment of damages, the question of location is examinable.

Nov. Term,
1859.

THE LAFAY-
ETTE PLANK-
ROAD CO.
v.
THE NEW
ALBANY, &C.,
RAILRO'D CO.

Tuesday,
November 29.

APPEAL from the *Clinton* Circuit Court.

PERKINS, J.—This was a suit, in the nature of an action on the case, at common law, by *The Lafayette Plankroad Company* against *The New Albany and Salem Railroad Company*, to recover damages for injury done by the latter company to the former, in the construction of a railroad..

The plaintiff recovered on the first trial. The defendant moved for a new trial on two grounds—

1. That one of the jurors who sat upon the trial, was not a householder.

2. That one of the jurors who sat upon the trial, did not understand the *English* language.

The Court granted the new trial for the second cause.

We are not prepared to say that the new trial might not have been granted for the first cause. The fact that the juror was not a householder, was a good cause of challenge. But the challenge was not made, nor was the juror interrogated as to his qualifications.

Had the defendants known that the juror was incompetent at the trial, their failure to raise the objection would have been a waiver of it. It appears that they were then ignorant of the fact. Whether their neglect to make inquiry as to the fact, before accepting the juror, should be held a waiver, we need not here decide, as we are clear that the new trial was properly granted for the second cause. *Hogshead* v. *The State*, 9 Humph. 59. That cause was, as we have seen, that one of the jurors could neither read nor write the *English* language, nor could he understand it when spoken to him upon subjects, other than such as related to his particular business, farming, and then but imperfectly. The defendants were not aware of

Nov. Term,
1859.

THE LAFAY-
ETTE PLANK-
ROAD Co.
v.
THE NEW
ALBANY, &c.,
RAILRO'D Co.

the fact till after the trial; and though they might have examined the juror touching this point before accepting him, we do not think the failure to do so can be considered negligence. The party might well presume that the officer had called a juror competent in this particular.

The fact that the juror was thus incompetent, was proved by his own admission under oath; and it is objected that this mode of establishing the fact was forbidden by the rule, that jurors are incompetent to impeach their verdicts. The case does not fall within the rule. It was not a fact as to misbehavior of the jury, but as to competency to serve as such.

On the second trial, the judgment was for the defendants.

The plaintiffs appeal, and seek a reversal of that judgment.

The controversy arises upon these two general facts—

The plankroad company had constructed their road.

Subsequently, the railroad company constructed theirs, crossing the plankroad, not at right angles, but at such an angle as occasioned the extending of the railroad almost parallel with the plankroad, for about a quarter of a mile, and so near to it, as, it is alleged, to render traveling upon the latter, dangerous, owing to the fright of horses by the locomotives, whereby the franchise of the plankroad company was depreciated in value, and injured to ———— dollars, &c.

The legal propositions applicable to these facts, are well settled.

1. The grant of a charter for a road, a bridge, or a ferry, does not estop the legislature from granting a subsequent charter for a road, a bridge, or a ferry, which may compete with the former in the transportation of freight and passengers between given points; and the simple fact that the two run parallel, and mutually diminish the business of each other, is no ground for a claim by either, to damages. *Bush* v. *The Peru Bridge Co.*, 3 Ind. R. 21.

2. The ground occupied by an existing company may

be taken, if authorized by the legislature, by a subsequently chartered company, upon making compensation. *The Newcastle, &c., Co.* v. *The Peru, &c., Co., id.* 464.

3. The franchise of an existing company may be thus taken. Redf. on Railw., p. 129.

4. Where any part of the road-bed, or track, of an existing company, or the property of an individual, is taken; so that a proceeding under the statute may be had for the assessment of damages, all the damages occasioned by the taking, both to the ground and franchise, must be assessed and recovered in the statutory proceedings. *The Newcastle, &c., Co.* v. *The Peru, &c., Co., supra.*—Redf. on Railw., p. 152, *et seq.* See, also, Perk. Pr., p. 680. It is settled that the appraisal of land damages, is a bar to claims for injuries by fire from the engines, obstructing access to buildings, exposing persons or cattle to injury, cutting off the flowage of water to buildings, from springs, &c., even though such damages were unknown to the appraisers at the time of assessing the damages. Redf. on Railw., p. 154.

5. But where no part of the property of an existing company, or an individual, is taken, in such case, unless the statute plainly authorize a proceeding to assess damages for consequential injuries, such damages may be recovered in an ordinary action at law. *The Evansville, &c., Co.* v. *Dick,* 9 Ind. R. 433.—Redf. on Railw., *supra.* But,

6. In the construction of the work for which the property of another is taken, reasonable care and skill must be exercised, or the party will be liable to an action for the tort, as at common law. *Conwell* v. *Emrie,* 4 Ind. R. 209. —Redf. on Railw., p. 153.—6 Gray (Mass. R.), 544.—10 Cush. 385.

In the case at bar, the jury found that the railroad company constructed their work with care, skill, and good faith. No complaint is made of the instructions given to the jury by the Court.

But it is contended that the railroad company might have selected a different line for their road, whereby they would have injured the plankroad company less. It is too

Nov. Term, 1859.

THE LAFAYETTE PLANK-ROAD CO.
v.
THE NEW ALBANY, &c., RAILRO'D CO.

Nov. Term,
1859.

THE LAFAY-
ETTE PLANK-
ROAD CO.
v.
THE NEW
ALBANY, &c.,
RAILRO'D CO.

late now to raise this question. The plankroad did, as we may presume, after the railroad company had made their location, apply, under the statute, for damages, and claim and recover such as the location selected would occasion (see *The Martinsville, &c., Railroad Co.* v. *Bridges*, 6 Ind. R. 400); and they might have had an injunction till the damages were paid; and, perhaps, to have controlled the location.

In the proceedings for the assessment of damages, the question of location was examinable. *The New Albany, &c., Railroad Co.* v. *Connelly*, 7 Ind. R. 32. It is not denied that that mode was within the limits prescribed by the charter.

*Per Curiam.*—The judgment is affirmed with costs.

*R. Jones*, *S. A. Huff*, and *R. C. Gregory*, for the appellants (1).

*H. W. Chase*, *J. A. Wilstach*, *J. E. McDonald*, and *S. C. Willson*, for the appellees (2).

---

(1) Extracts of the argument of counsel for the appellants:

What the exact rule may be that will govern the determination of this Court upon being asked to review the action of a lower Court in granting a new trial, it is somewhat difficult to determine.

In *Jones* v. *Cooprider*, 1 Blackf. 47, this Court reversed the cause because the Circuit Court had improperly granted a new trial, and ordered judgment to be entered on the first verdict. The new trial had been granted because the Court below held that illegal evidence had been admitted on the first trial, which evidence this Court held to have been legal and proper.

In *Cummins* v. *Walden*, 4 Blackf. 307, the same ruling was made, when the new trial had been granted on affidavits which did not show a sufficient reason therefor.

The rule is clearly stated by SULLIVAN, J., in *Bisel* v. *Hobbs*, 6 Blackf. 479. He says: "So when a verdict has been set aside, and a new trial granted for reasons not recognized by the law, and upon the second trial judgment has been rendered in favor of the party obtaining the new trial, the judgment will be reversed, and the party that obtained the first verdict, will be restored to his rights under that verdict."

In *Nagle* v. *Hornberger*, 6 Ind. R. 69, it is said: "The Court will more readily control the discretion of the Court below in refusing a new trial, than in granting it."

And in *Powell* v. *Grimes*, 8 Ind. R. 252: "The Court would very reluctantly set aside the granting of a new trial—perhaps a case might occur in which it would do it—but when the Court below conducting the trial is not satisfied with its fairness, we would be slow to differ with it."

*Leppar* v. *Enderton*, 9 Ind. R. 353, and *Cronk* v. *Cole*, 10 *id*. 485, are to the same effect. Each of them were cases in which there was a sufficient cause stated for a new trial, and an attempt to show the cause stated to exist; and where the cause was one to be made out by evidence, the affidavits were such as could be received for that purpose.

The rule of this Court, as deduced from the cases adjudicated by it, would seem to be, that granting a new trial is not erroneous, unless it is clearly shown by the record, that such new trial was granted for "reasons not recognized by the law;" or if granted for causes to be made out by proof, that there was no legal proof tending to show the existence of such causes.

There can be no new trial granted, except for some one of the reasons specified in § 352, 2 R. S. p. 117.

The cause for which this new trial was granted, if it can be ranked under any of the statutory causes (which is denied), must be held to be within the second named in said section, "misconduct of the jury."

Admitting the speaking *German* in the jury room, or the fact of one sitting as a juror, who did not fully understand what was said by the Court, the counsel, &c., was misconduct within the statute; we insist there is no legal proof of such misconduct. The only attempt at proof is by the testimony of the two jurors, *Wehr* and *Smith*, given either in their affidavits, or in their examination by the Court. The rule of law is clear, that "the affidavits of the jurors themselves, of their misconduct, are not admitted to impeach their verdict." *Drummond* v. *Leslie*, 5 Blackf. 454.—*Dunn* v. *Hall*, 8 *id*. 32. Within this rule, the evidence of misconduct was wholly inadmissible, and consequently should be striken out, thus leaving the case without any evidence tending to show the existence of the cause alleged for a new trial.

\*     \*     \*     \*     \*     \*     \*     \*     \*

Every paragraph of the answer is certainly bad, under the recent rulings of this Court; and the demurrers to them should have been sustained, because the gravamen is a consequential injury, and the damages therefor could not be recovered under the statutory proceeding. *Tate* v. *The Ohio, &c., Railroad Co.*, 7 Ind. R. 479.—*Hutton* v. *The Indiana Central Railway Co.*, *id*. 522.—*The Evansville, &c., Railroad Co.* v. *Dick*, 9 *id*. 433.—*The Indiana Central Railway Co.* v. *Boden*, 10 *id*. 96.

It is alleged in the complaint that the defendants, by the peculiar location and manner of construction of their road, had done the plaintiffs unnecessary damage, &c. This is reiterated in the reply. The demurrer to the complaint, and that to the reply, present the question, whether, when property was taken possession of under the internal improvement act of 1836, and governed by that alone, an action at law could in any case be maintained. That act provides that private property may be taken possession of, &c., "avoiding, in all cases, unnecessary damage or injury to the proprietors."

So long as no unnecessary damage is done, the statutory right only is exercised, and the statutory remedy for taking property is the only one. But when "unnecessary damage is done," the statutory right is exceeded, its protection forfeited, and the ordinary remedy for the invasion of a private right may be resorted to by the party injured. So it has been ruled under similar enactments. *Lawrence* v. *The Great Western Railway Co.*, 6 Railw. and Canal cases, 656.—*The Queen* v. *Scott*, 3 *id*. 187.—*Conwell* v. *Emrie*, 4 Ind. R. 209.

The rule above stated is no new one, but has long been of frequent applica-

Nov. Term, 1859.

THE LAFAY-
ETTE PLANK-
ROAD CO.
v.
THE NEW
ALBANY, &C.,
RAILRO'D CO.

Nov. Term,
1859.

The Lafay-
ette Plank-
road Co.
v.
The New
Albany, &c.,
Railro'd Co.

tion in large classes of cases. We need only mention the familiar ones of distress for rent, distress made damage feasant, estrays, &c.; in all which cases, if the party making the distress, taking up the estray, &c., does any act the law has forbidden, that is, exceeds the right given him by law, he becomes a trespasser *ab initio*, and may be proceeded against as such.

So here, if the defendants exceeded the power vested in them, that is, have done unnecessary damage, an action at law is the appropriate remedy. *Conwell* v. *Emrie*, 4 Ind. R. 209.

What is unnecessary damage within the meaning of the act of 1836? Is the damage inflicted a necessary one, because it was done in constructing a railroad, if it is constructed in such a place and manner, as to cost the railroad company the smallest possible amount?

This cannot be the meaning of the expression, especially when you come to apply it to a case like the present, where one corporation is interfering with the rights vested in another. The history of the rulings of the Courts, upon questions growing out of the exercise of the right of eminent domain, is a curious and instructive one. It certainly was a wonderful exertion of the legislative functions sometimes assumed by Courts, when they held that a state could transfer to a private corporation the right of eminent domain, to be exercised for the exclusive profit of the corporators, giving to the corporators this high prerogative, to go as a part of the investment, into a mere private speculation. But it was done upon the hypothesis assumed, that the prerogative was to be exercised only for the public good—a hypothesis as false in theory as it is in practice.

It would have seemed that this species of legislation was exhausted over a given subject-matter, when it had become the property of a corporation under the exercise of this high prerogative; that the right of eminent domain conferred on one corporation, and exercised by it, could not be again conferred on another, so as to embrace the same property, or any part of it. This was clearly the first leaning of the Courts. *The Hudson River, &c., Canal Co.* v. *The New York, &c., Railroad Co.*, 9 Paige, 323.—*The Canal Co.* v. *The Railroad Co.*, 4 Gill and Johns. 1.—*The Seneca Road Co.* v. *The Auburn Railroad Co.*, 5 Hill, 170.

But an imperious necessity intervened, and the Courts, under its pressure, must again legislate, to avoid what upon principle was the obvious and proper result of their previous action. So they held that the rights vested in one corporation might be interfered with by another corporation under a like grant of eminent domain, so far as necessary to carry into effect the public purposes for which the latter had been created. This is the doctrine of the Courts at the present time. They have universally placed this limit upon the right of one corporation to interfere with, or take, the corporate franchises or property of another corporation. The rule is clearly stated in *Springfield* v. *The Conn., &c., Railroad Co.*, 4 Cush. 63, where the Court, in discussing the power of a railroad company to construct their road upon a highway, so as to obstruct the highway, says, p. 72:

"In the present case, it is manifest there are no words in the act of 1845, which give the defendants authority to locate and construct their railroad over *Front* street, where it was actually laid, or over any other highway in *Cobotville*; and if they had the power, it must be derived from necessary implication, though no such implication appears on the face of the act. If it exist,

it must arise from the application of the act to the subject-matter, so that the railroad could not, by reasonable intendment, be laid on any other line. The grant of the right is, by reasonable construction, a grant of power to do all the acts necessary to its enjoyment. It is not an absolute or physical necessity, absolutely preventing its being laid elsewhere; but if to the minds of reasonable men, conversant with the subject, another line could have been adopted between the *termini* without taking the highway, and reasonably sufficient to accommodate all the interests concerned, and to accomplish the objects for which the grant was made, then there was no such necessity as to warrant the presumption that the legislature intended to authorize the taking of the highway." See, also, 21 Vt. R. 590; Pierce on Am. Railr. Law, pp. 10, 11, 216, 217. The author last cited (p. 216) says: "Where the route selected by two companies incorporated to construct independent lines interfered, the *termini* only of each being prescribed, and there being no necessary conflict on the face of the charter, or in their objects, the prior right to particular land was held to attach to the company which first actually surveyed and adopted a route," &c.

Nov. Term, 1859.

———

THE LAFAY-ETTE PLANK-ROAD CO.
v.
THE NEW ALBANY, &C., RAILRO'D CO.

And this rule is in accordance with the most recent doctrine of all the Courts of this country.

The necessity that will authorize the seizing on the corporate property, or interfering with the franchises of another corporation, must be an actual necessity—one that all men would understand and appreciate to be such. Such necessity does not exist, when all the public purposes of the latter corporation could be equally as well effected without doing the injury. The saving of a few thousand dollars does not create this necessity.

\* \* \* \* \* \* \* \* \*

(2) Extracts from the argument of counsel for the appellees:

We propose to take up the questions arising in the record in their order, and, without meeting the arguments of the appellants' counsel *seriatim*, to discuss them incidentally where inconsistent with our theory of the case.

The appellee was entitled to have the first verdict set aside, and there was no error in granting the new trial, even though the Court may have based its action upon a wrong cause.

The appellants had no right to seek a remedy for the alleged injuries in this form of action, but were bound to file their application for the assessment of their damages in the mode provided by the appellees' charter. That the appellees are, *prima facie*, entitled to have parties claiming damages for the construction of their railroad seek the charter remedy, and have appraisers appointed for their assessment, is no longer an open question. It was expressly so held in *The New Albany, &c., Railroad Co.* v. *Connelly,* 7 Ind. R. 32, which is in accordance with all the adjudications upon similar questions in this and our sister states.

\* \* \* \* \* \* \* \* \*

The principle for which we contend, in support of the demurrers, and upon which the instructions refused were based, as well as the foundation for the interrogatories propounded to the jury, is, that if the appellees, in the proper use of their franchises, exercising good faith and reasonable care and skill, located, constructed, and operated their railroad across the plankroad, they are within their charter, and not liable as a wrongdoer. The statute of 1838, p.

Nov. Term,
1859.

The Lafay-
ette Plank-
road Co.
v.
The New
Albany, &c.,
Railro'd Co.

343, § 16, enjoining doing no "unnecessary damage," must have a reasonable interpretation. Where only the *termini* of a railroad are fixed by the charter, the selection of the particular route, the mode of construction, and the operation of the work, must of necessity be left to the sound discretion of the company. The location and mode of construction, being matters depending upon skill and judgment, all that reason and justice require is, that good faith, reasonable skill, and due care should be exercised. Were any other rule adopted, there would be no safety whatever in the location or construction of any public work. Indeed, every expert called in the case, and their number was large and embraced men who have been engaged as civil engineers in locating canals and railroads ever since works of that kind were projected in the state, testified to the jury that they had never located a line of road, although done with the best intentions and to the best of their ability, but that after the work was completed, they could see where it was susceptible of improvement. There is not, we apprehend, in the whole state, a line of railroad but that would be condemned by competent engineers as improperly located in many parts of the route. Opinions are as various as the men who entertain them. "The company is clothed with a discretion, not indeed arbitrary, but to be exercised, *bona fide*, of doing the works necessary to accomplish the main purpose authorized by the act, in such a manner as reasonable, careful, and skillful men would judge expedient and fit." Pierce on Am. Railr. Law, p. 14. Indeed, it is expressly decided that the company are the judges of what the exigency of their work requires. *Brainard* v. *Clapp*, 10 Cush. 6.—*Mellen* v. *The Western Railroad Co.*, 4 Gray, 301.

\* \* \* \* \* \* \* \* \*

But the appellees' counsel now insist upon a new ground in support of their claim to a common-law action, and argue that the damages were entirely consequential, and, therefore, not embraced in the charter remedy. Several recent decisions of this Court are cited as authority to sustain the position. We cannot admit that the damages complained of are strictly consequential. It is alleged in the complaint that the railroad company took possession of the plankroad bridge, and destroyed it, and used the appellants' road-bed. This was a direct injury, and drew after it, as an incident, the other injuries complained of. Still, we are disposed to meet and answer the arguments of the appellants' counsel fully, upon the position as now assumed.

The question thus presented is one of the greatest possible importance to the appellees, and every other railroad or canal corporation in the state, organized under the internal improvement act of 1836; and we propose to examine it carefully, for the purpose of showing the appellants' position to be untenable.

By the 16th section of the act of 1836 (R. S. 1838, p. 343), the board of internal improvement were authorized "to enter upon, and take possession of, and use all and singular, any lands, streams, and materials," in the building of railroads, &c. By § 17, "In all cases where persons may feel aggrieved or injured by the construction of any of the works," &c., "the person or persons so feeling aggrieved or injured, shall make out a written statement of the cause of such complaint," &c., "and deliver the same to the members of the board," &c. Then follow provisions for the appointment of appraisers to assess the damages, and for appeals to the Circuit Court. In order to give a fair construction to this statute, we must take into consideration the provisions

of the constitution then in force, the nature of injuries for which damages could be awarded, and the purposes and objects sought to be obtained by the legislature in the passage of the act.

Section 7, art. 1, of the constitution of 1816, provides that "No man's particular services shall be demanded, or property taken or applied to public use, without the consent of his representatives, or without a just compensation being made therefor." Section 21, art. 1, of the present constitution, is similar in its language and meaning, except that the words "or applied to public use" are omitted, and provision is made that the damages, except in case of property taken by the state, must first be assessed and tendered.

In *The Evansville, &c., Railroad Co.* v. *Dick,* 9 Ind. R. 433, Judge DAVISON, delivering the opinion of the Court, says: "As we are advised, a proper construction of the word 'taken' makes it synonymous with seized, injured, destroyed, deprived of."

Therefore, had the state, under the act of 1836, put in and used the railroad crossing which is alleged to have injured the plankroad, and deprived the appellants of its use, it would have been a taking for which a compensation would have been allowed. Now it must be, that the act in question contemplates a remedy for every injury necessarily resulting from the construction of the work, that could be the subject of legal redress in any form; otherwise, it must be held unconstitutional in so far as it purports to authorize acts which must occasion even unavoidable but consequential injuries. *The State* v. *Beackmo,* 8 Blackf. 246. The state, in its sovereign capacity, could not be sued, and if the special remedy is not broad enough to cover all unavoidable injuries, then all those acts producing such injuries would be unauthorized by law, and the parties engaged in the work producing them would be trespassers. This would be to determine the general internal improvement law ineffectual for the purposes contemplated by the legislature, as understood and acted upon by the Courts, and all others interested since its enactment.

It would seem that the provision in § 17 of the act that, "in all cases where persons may feel aggrieved or injured by the construction of any of the works," &c., they may file their claims and have their damages assessed, would naturally be understood to cover every conceivable injury, without resorting to authorities in support of such construction; still, as the appellants' counsel appear confident in their new position, we urge the following as conclusive against them:

In *Kimble* v. *The White Water, &c., Canal Co.,* 1 Ind. R. 285, a consequential injury, occasioned by diverting a stream of water from the plaintiff's mills, was held not to be the ground of a common-law action, but that the special remedy must be followed. The charter remedy of that company is not so comprehensive as that of the appellees.

The *Massachusetts* statute on the subject, enacts that "every railroad corporation shall be liable to pay all damages that shall be occasioned by laying out, and making and maintaining their road, or by taking any land or materials as provided in the preceding section." The *Eastern Railroad Company* in grading their track, passed through a ledge of rocks on lands adjacent to the plaintiff's, and in the necessary blasting of the rock, injured his house. The Court say: "It is a well settled principle, that when the legislature, under the right of eminent domain, and for the prosecution of works for public use, authorize an act or series of acts, the natural and necessary consequence of doing which,

Nov. Term, **1859.**

THE LAFAYETTE PLANKROAD CO. v. THE NEW ALBANY, &c., RAILRO'D CO.

Nov. Term,
1859.

THE LAFAY-
ETTE PLANK-
ROAD CO.
v.
THE NEW
ALBANY, &C.,
RAILRO'D CO.

will be damage to another, and provide a mode for the assessment and pay-
ment of the damages occasioned by such work, the party authorized, acting
within the scope of his authority, is not a wrongdoer; an action will not lie
as for a tort, and the remedy is by the statute, and not at common law." *Dodge
v. The County Commissioners, &c., of Essex,* 3 Met. 380 (1 Am. Railw. Cases,
336). Several cases are cited in support of this doctrine. See, also, the re-
cent case of *Perry* v. *The City of Worcester,* 6 Gray, 544, where this doctrine
is clearly stated and settled.

The case of *Lawrence* v. *The Great Northern Railroad Co.,* 4 Eng. Law and
Eq. 265 (6 Railw. and Canal Cases, Eng. ed., 656), decided that the railway
company were liable in an action on the case for flowing lands, and this case
might at first seem to sustain the appellants' argument, but PATTERSON, J., in
pronouncing the opinion, says: "Here the company might, by executing their
works with proper caution, have avoided the injury which the plaintiff has sus-
tained; and we think the want of such caution is sufficient to sustain the ac-
tion." This shows that the railway company were liable in a common-law
action, because they had exceeded their chartered rights, and were wrongdoers,
and not because the injuries were consequential.

A case very similar to the last, has been decided in *Massachusetts,* in the
same way and for the same reason. The injury complained of, was the ob-
struction by a railroad company, whereby the plaintiff's lands were flooded,
and a remedy was sought under the statute. The Court held, that "it was
not warranted by their charter, and, therefore, not a necessary or incidental
damage, caused by the exercise of those powers for the public use, and so not
a loss to be compensated by damages for the appropriation of private prop-
erty to public uses," and that an action on the case would lie. *The Proprie-
tors of Locks, &c.* v. *The Nashua and Lowell Railroad Co.,* 10 Cush. 385. A
careful examination of all the authorities will show that where the charter
remedy is co-extensive with the injuries naturally resulting from the proper
use of the authority conferred, a common-law action will not lie. It is impos-
sible to assign a reason why any distinction should be made in the assessment
of necessary damages that are the direct result of appropriating lands, or the
consequential result of the proper construction of the work, if the charter
remedy embraces both.

This brings us to consider the effect of the recent rulings of this Court, in
the cases relied upon by the appellants' counsel. The first case is *Tate* v. *The
Ohio and Mississippi Railroad Co.,* 7 Ind. R. 479, where it is held that an ac-
tion would lie for injuries consequent upon the raising of an embankment in a
street opposite *Tate's* lots, whereby access to them was prevented. The Court
say: "The structure is an unauthorized obstruction of a public highway."
The remedy afforded in the charter of this railroad company will be found in §
15, p. 624, Local Laws of 1848, as follows: "That in all cases where any person
or persons through whose land the road may run, shall refuse to relinquish the
same, or when a contract between the parties cannot be made for materials
along the route," damages are to be assessed by six persons of the neighbor-
hood, sworn for that purpose before a justice of the peace, upon "view of the
land and materials," after taking into consideration the advantages and disad-
vantages, &c., of the work. It will be seen that the charter remedy only ap-
plies to land and materials actually appropriated, and does not extend to con-
sequential injuries. This case does not sustain the appellants' argument, first,

because the embankment is held to be an unauthorized obstruction of the street, and secondly, because the charter did not provide a remedy for consequential injuries. We may add, that no point was made either in the pleadings below, or in the Supreme Court, that an improper remedy was sought.

The cases of *Hutton* v. *The Indiana Central Railway Co.*, 7 Ind. R. 522, and the same company v. *Boden*, 10 *id.* 96, both proceed upon the ground that the charter remedy did not embrace consequential injuries. In the last case, which was commenced under the statute, the Court say: "Still the plaintiff is not without remedy; because it has often been decided that a railroad company, for an injury which necessarily results to private property from the construction of their work—there being no remedy given by their charter—is liable at common law." In the case of *The Evansville, &c., Railroad Co.* v. *Dick*, 9 Ind. R. 433, it was held that consequential damages were recoverable in an action on the case, because the legislature had no right to authorize an injury without providing a remedy, and as the charter did not make provision for this recovery, the injured party had his common-law action.

*Protzman* v. *The Indianapolis, &c., Railroad Co.*, 9 Ind. R. 467, was decided upon the same grounds. It is true, in this case, Judge PERKINS refers to *The New Albany, &c., Railroad Co.* v. *Connelly*, 7 Ind. R. 32, as determining that the statutory remedy must generally be followed; but that it has been considered that for such consequential injuries, the property has not been so taken as to justify that remedy, and that, therefore, the party is left to the ordinary one at law. But it is apparent that the distinction between the comprehensive charter remedy of the appellees, and the limited one of the *Indianapolis and Lawrenceburgh Railroad Company* was not pointed out or considered.

*Eward* v. *The Lawrenceburgh, &c., Railroad Co*, 7 Ind. R. 711, was an action of trespass for work done upon a line of railroad which was afterwards abandoned and the road re-located a mile or so from the land. The company claimed that the remedy was under their charter, but the Court decided that the charter remedy was for those through whose land the road should run, and that the common-law action would lie. See numerous authorities cited in Redf. on Railw., in the chapter "Lands injuriously affected," p. 175.

We have thus endeavored to show that the decisions of this Court do not sustain the position that the appellees are not liable, under their charter, for consequential injuries.

\*　\*　\*　\*　\*　\*　\*　\*　\*

The appellants' property in the plankroad, and their franchises secured by their charter, were the subjects of appropriation in the same manner, if necessary for the railroad, as though they had been private property. Pierce's Am. Railr. Law, 151 to 160.—*The Newcastle, &c., Railroad Co.* v. *The Peru, &c., Railroad Co.*, 3 Ind. R. 469.—*The Richmond, &c., Railroad Co.* v. *The Louisa Railroad Co.*, 13 How. 71.—Redf. on Railw., p. 129.

\*　\*　\*　\*　\*　\*　\*　\*　\*

The first verdict was properly set aside for the incompetency of the juror, *Samuel Wehr*.

Counsel for appellants, in commenting upon the action of the Court in granting the new trial for this cause, deny that it is one recognized by the statute, and insist that if it is, it must be classed as "misconduct of the jury." We think that placing a man upon the jury who was so ignorant of the *English* language that he "could not understand the evidence of witnesses, the argument of

<div style="margin-left:auto">
</div>

Nov. Term,
**1859.**

The Lafay-
ette Plank-
road Co.
v.
The New
Albany, &c.,
Railro'd Co.

the counsel, or the instructions of the Court," which ignorance was unknown both to the parties and the Court until after the rendition of the verdict, was an "irregularity in the proceedings of the Court, by which the party was prevented from having a fair trial," and an "accident or surprise which ordinary prudence could not have guarded against," and was thus a cause for a new trial, within the first and third clauses of § 352, 2 R. S. p. 117.

We take the position that a competent juror must be a man of sound mind, of ordinary intelligence, and having a sufficient acquaintance with the *English* language to understand the evidence of the witnesses, and the instructions of the Court. We are not urging a standard of memory, or even a capacity to comprehend all the facts and instructions in a complicated trial of several days duration. But unless a man understand the language sufficiently to appreciate the testimony so as to form some intelligent judgment of what it proves, and be able to apply the instructions of the Court to it, he ought not, in justice to parties, to be permitted to sit upon a jury. *Wehr* could do neither, and was, therefore, incompetent, and for that reason, the cause was not tried, in the first instance, by a legal jury. We quote the following case at length, upon this point: In *Hogshead* v. *The State*, 6 Humph. 59, Reese, J., delivered the opinion of the Court, as follows:

"The plaintiff in error was indicted for a felony in passing and offering to pass a counterfeit *Mexican* dollar. The defendant below elected as one of the jury, an individual who, it seems from the affidavits made to procure a new trial after his conviction, was of intemperate habits. The general state of these habits was known to defendant and his counsel, but the latter did not know, and it does not appear that the fromer knew, that these habits had frequently produced the bodily and mental disease called *delirium tremens* or *mania a potu*. It appears from the affidavits referred to, that during the investigation of the cause in Court, the manner of the juror indicated him to be in a state of dull and stupid abstraction. At night the jury were taken, in care of an officer, to some room in town, to consider of their verdict, and to be kept together. About eleven o'clock at night, the juror became much indisposed, and was threatened with spasms, and on the verge of an attack of *delirium tremens*.

"The physician who usually attended him on such occasions, was sent for; and he testified, that from the condition in which he found his patient, and from the knowledge he had of his case in general, and from attendance on him during former attacks, that he could not have been, during the investigation of the cause in Court, in a condition to have possessed himself intelligently, of the facts and circumstances of the case, so as to have performed, in a rational manner, the duties of a juror. In the morning, the juror continued dull and stupid, but on taking a draught of ardent spirits and breakfasting, he seemed pretty well. Some of the jury testified that he manifested more intelligence than they had expected, in discussing with them the testimony; but whether his knowledge in this respect, was the result of attention in Court, or was picked up in the jury room, they did not know. It does not appear that before the verdict was given, the prisoner or his counsel knew of the condition of the juror during the preceding night. Upon the whole case, we think the prisoner is entitled to a new trial; not on the ground that the juror may have been under the influence of ardent spirits, as stated by one of the witnesses, when he first entered the jury box, or that he took a draught of ardent spirits on the morning the verdict was rendered; nor on the ground of the slight sep-

aration of the jury, which became necessary when the physician visited the juror (where, we think, it is shown nothing improper took place); but upon the ground that it is probable that during the investigation of the cause in Court, and the deliberation of the jury upon their verdict, the juror in question was not in a state of mental and bodily health, enabling him to perform his duties intelligently; and that the fact was unknown to the Court, to the counsel on both sides, and to the prisoner, until after the verdict. Let a new trial be had in this case."

\*   \*   \*   \*   \*   \*   \*   \*   \*

The cases of *Powell* v. *Grimes*, 8 Ind. R. 252, *Leppar* v. *Enderton*, 9 *id.* 353, *Cronk* v. *Cole*, 10 *id.* 485, decide that this Court will be very reluctant to differ with the Court below and reverse its judgment where a new trial has been granted illegally. In the case of *Leppar* v. *Enderton*, a new trial was granted upon grounds repeatedly held by this Court to be insufficient, and yet this Court refused to reverse the judgment rendered upon the second verdict. The judge in this case, took especial pains to ascertain the incompetency of this juror, by a personal examination, entirely disregarding *ex parte* affidavits, and upon that examination, fully satisfied himself of that incompetency, and consequently, of the unfairness of the trial. The decision in *Powell* v. *Grimes*, is conclusive that this Court will not disturb this ruling, and thus impeach the intelligence and integrity of the judge who was not satisfied with the fairness of the first trial.

We, therefore, conclude that the Court committed no error in setting aside the first verdict and granting a new trial.