No. 11,695.

THE CHICAGO AND GREAT SOUTHERN RAILWAY COMPANY v. JONES.

PLEADING.—*Amendment.*—*Supreme Court.*—*Practice.*—The decision of the trial court granting or refusing leave to amend a pleading, where cause is shown, is not conclusive, and may be reviewed in the Supreme Court.

RAILROAD.—*Appropriation of Land.*—*Amendment of Instrument of Appropriation.*—*Damages.*—In a proceeding by a railroad company to appropriate land for a right of way, it has the right, upon cause shown, to amend the instrument of appropriation after the filing of the report of the appraisers and the joining of issues on exceptions thereto, by adding stipulations as to the maintenance by the company of fences and crossings calculated to reduce the amount of consequential damages.

SAME.—*Injunction.*—*Pleading.*—*Practice.*—An application for an order restraining a railroad company from further proceedings in the matter of appropriating land for railroad purposes must be based upon a complaint making a proper case for such relief.

SAME.—*Appeal from Award of Appraisers.*—*Judgment for Damages.*—*Statute Construed.*—Under section 3907, R. S. 1881, on appeal from the award of damages made by the appraisers in a proceeding to appropriate land for a right of way, the circuit court can only render judgment for the amount of compensation found due the owner, and a judgment enjoining the railroad company, on its failure to pay such amount within a certain time, from going upon or using such land until the same is paid, is erroneous.

From the Tippecanoe Circuit Court.

The Chicago and Great Southern Railway Company v. Jones.

*G. W. McDonald, W. D. Wallace* and *T. C. Annabal,* for appellant.

*J. R. Coffroth* and *T. A. Stuart,* for appellee.

NIBLACK, J.—Clement G. Jones was, on the 7th day of March, 1883, the owner of a tract of land in Warren county, over which the Chicago and Great Western Railway Company wished to obtain the right of way for its line of railroad, and the parties being unable to agree upon the terms upon which such right of way might be obtained, the railway company, on that day, deposited with the clerk of the Warren Circuit Court a written instrument of appropriation, particularly describing a strip of ground running across the tract of land in question, as the land intended to be appropriated for a right of way, and generally for railroad purposes. On the 17th day of the same month, the judge of the Warren Circuit Court appointed appraisers who made a report assessing Jones' damages at $800. Jones filed exceptions to the report of the appraisers, to which replies were made at the ensuing term of the court last named. A change of venue was then granted to the Tippecanoe Circuit Court, where, at the second term after the cause had reached that court, the railway company asked leave and proposed, if permitted, to amend the instrument of appropriation, theretofore filed by it, by inserting therein, at a specified and appropriate place, the following:

"The said right of way so appropriated as aforesaid to be fenced by said railway company on either side thereof, with a good and substantial wire fence, consisting of five strands of wire, secured by and fastened to good oak posts set in the ground at proper distance from each other. And the said railway to be constructed in the said right of way with an underground passage under the track thereof, fifteen feet in width, giving free, easy and perpetual access to cattle, hogs, and other stock from each side of the right of way to the opposite field. The said fences and under-crossing to be con-

structed and always maintained at the expense of said railway company."

In support of this application one of the directors of the railway company filed his affidavit stating, amongst other things, that at the time the proceedings to appropriate the right of way were commenced, it was uncertain whether the grades of the line of road to be thereafter adopted would be such as to admit of the construction of a crossing under the track of a depth sufficient to permit the free passage of cattle and other animals through the same; that since the commencement of such proceedings, the company had constructed its line of road over Jones' land upon a grade which permitted the making of such an under crossing, and that such a crossing had been then already begun and partially made; that the company had, also, already procured wire and posts to make a good and substantial wire fence across Jones' land on both sides of its line of road, which it was the intention of the company to erect without unnecessary delay, and to always maintain after its erection; that at the time the issues were closed upon the exceptions filed by Jones to the report of the appraisers, the company did not know that an under crossing upon the land in controversy was practicable.

A counter-affidavit was filed charging that since filing the instrument of appropriation the railway company had mortgaged its road, equipments and all other property then belonging to it, or thereafter to be acquired, to secure the payment of two millions of dollars and accruing interest.

The circuit court thereupon refused to permit the railway company to amend its instrument of appropriation as was proposed. The question as to the amount of damages to which Jones was entitled was then submitted to a jury, the result being a verdict in his favor for the gross sum of $3,488.15, for which, with costs, a judgment of recovery was rendered against the railway company, describing the real estate for which the damages were assessed. To the judgment thus rendered was added the following:

" It is further ordered, adjudged and decreed by the court, upon failure to pay said damages for the period of thirty days, said defendant, the Chicago and Great Southern Railway Company, its servants, agents and employees, and the successors and assignees of said defendant, and their servants, agents and employees, and all persons acting by, through or under them, or either of them, be, and they and each of them are, forever enjoined and restrained from going upon, using, occupying or enjoying the said described real estate, or any part thereof, in any way whatever, or for any purpose, until the judgment aforesaid, principal and interest, shall be fully paid and satisfied."

Questions are made in argument only upon the refusal of the circuit court to permit an amendment of the instrument of appropriation, and upon the judgment rendered upon the verdict.

Whether a party shall be allowed to amend his pleadings after the issues are closed, is a matter resting very much in the discretion of the *nisi prius* court. The fact that in such a case leave of court is necessary, implies the right of the court to refuse permission to amend in any case except upon good cause shown, and, even when a showing is made, the matter is still within the legal discretion of the court, the leave to be granted or refused accordingly. But the decision of the *nisi prius* court, when cause is shown, is not conclusive. It may be reviewed in this court, and will be disapproved when substantial injustice appears to have been done. Works Pr., section 700; *Burr* v. *Mendenhall*, 49 Ind. 496; *Shropshire* v. *Kennedy*, 84 Ind. 111.

Section 3909, R. S. 1881, extends the power to make amendments to cases of the kind now before us, and, in effect, makes the provisions of the civil code on the subject of amendments applicable to such cases.

In support of the decision of the circuit court refusing to allow an amendment of the instrument of appropriation, it is argued that, under our Constitution, no man can be compelled

to accept benefits, easements or improvements, either in whole or in part, payment of land taken from him for railroad purposes, and that the proposed amendment was simply an effort to have the organic terms upon which the appropriation had been made so changed that the fencing and under crossing to be provided for would be considered in reduction of the damages to which Jones is entitled, and hence in partial compensation for the land taken from him, citing the case of *Lake Erie, etc., R. W. Co.* v. *Kinsey*, 87 Ind. 514.

It is true that Jones was, and still is, entitled to receive for his damages, whether for the value of the land taken, or as consequential damages resulting from the taking, a compensation in money, but that right on his part did not preclude the railway company from adopting and using every means at its command calculated to reduce the amount of consequential damages likely to result to him to the lowest practicable sum. When a railroad is run through or over the land of another, as in this case, the condition in which the remaining land is left, the inconvenience, danger or impossibility likely to be met in crossing, or attempting to cross, the road, and the amount of fencing to be made probably necessary, are all questions usually arising for the consideration of the jury. If, therefore, under the circumstances disclosed by the affidavits filed in this case, the railway company was willing to enter into special and additional obligations, bearing upon those questions, or any one of them, we think it ought to have been allowed to do so. Whether the proposed stipulations would have mitigated the consequential damages likely to be inflicted upon Jones, and if so to what extent, would have constituted matters for the consideration of the jury which afterwards tried the cause. These stipulations would, at all events, have created obligations running with the land, and would have been presumably of some value to Jones.

This view appears to us to have been well illustrated by some of the testimony given and other proceedings had at the trial. In answer to an interrogatory addressed to them the jury fixed ·

the value of the land appropriated at only $225. The consequential damages assessed, not deducting some interest allowed, were, consequently, more than fifteen times greater than the value of the land.

In a matter involving so much of what is usually regarded as the exercise of a merely discretionary power, we come to a conclusion different from that reached by the circuit court, with much hesitation and reluctance, but we feel, nevertheless, constrained to hold that the railway company ought to have been allowed to amend its instrument of appropriation as it was proposed to amend it.

As sustaining so much of the judgment appealed from, as contingently restrains and enjoins the railroad company and its successors from using or occupying the land appropriated, it is claimed that this court has made many precedents recognizing in principle the validity as well as the propriety of such an order, citing the cases of *Lafayette Plankroad Co. v. New Albany, etc., R. R. Co.*, 13 Ind. 90; *Graham v. Columbus, etc., R. W. Co.*, 27 Ind. 260; *Cox v. Louisville, etc., R. R. Co.*, 48 Ind. 178; *Lake Erie, etc., R. W. Co. v. Kinsey, supra*, and other authorities, discussing the power of the courts to restrain railroad companies in particular cases and in certain contingencies.

It has been held by this court, and that has now become the established rule of decision, that the owner of land may enjoin a railroad company from entering upon and appropriating any part of the premises until his damages have been first assessed and paid. But that rule does not apply where the railroad company has entered and is in possession under a license either from the owner or conferred by statute. *Buchanan v. Logansport, etc., R. W. Co.*, 71 Ind. 265; *Pittsburgh, etc., R. W. Co. v. Swinney*, 97 Ind. 586.

Section 3907, R. S. 1881, under which this proceeding was instituted, after providing for an appeal from the assessment of damages made by the appraisers by filing exceptions to their award, continues: "*Provided,* That notwithstanding

such appeal, such company may take possession of the property therein described, as aforesaid, and the subsequent proceedings on the appeal shall only affect the amount of compensation to be allowed." We construe this proviso, when taken in connection with the other parts of the section, to mean that after the amount of the compensation, which ought to be allowed, has been ascertained by proper proceedings upon the appeal, the only thing remaining for the court to do is to render a judgment of recovery against the railroad company for the *amount* of compensation thus ascertained to be due for the land appropriated. There was, therefore, nothing in the nature of this proceeding which had any analogy to an application for an injunction, or which appealed to the merely equitable jurisdiction of the court.

When a railroad company, in its efforts to take and appropriate land for railroad purposes, places itself in a condition to be restrained from further proceedings in the matter of such appropriation, the application to have it so restrained must be based upon a complaint making a proper case for such relief. Consequently, so much of the judgment as contingently restrains and enjoins the railway company from using or occupying the land in controversy, as a means of enforcing the payment of the amount found to be due to Jones for his damages, is, in any event, erroneous. If that were the only error, it might be cured by a partial reversal of the judgment, but for error in not allowing the instrument of appropriation to be amended, the entire judgment, in our opinion, ought to be reversed.

The judgment is reversed with costs, and the cause remanded for further proceedings.

Filed April 21, 1885; petition for a rehearing overruled Nov. 3, 1885.