RUBERT HERMANOS *v.* THE HEIRS OF MARÍA LUISA LÓPEZ ET AL.

APPEAL from the District Court of San Juan.

No. 244.—Decided February 18, 1909.

AMENDMENT OF COMPLAINT DURING THE TRIAL.—Plaintiff may amend the complaint during the trial in order to harmonize same with the evidence presented and admitted.

EXAMINATION OF EVIDENCE—JUDGMENT IN ACCORD WITH THE EVIDENCE.—When from an examination of the evidence as set forth in the statement of the case it appears that the judgment appealed from is in accord with the evidence, it must be affirmed.

MORTGAGE—OWNER OF MORTGAGE CREDIT ACCORDING TO THE REGISTRY—ISSUANCE OF MORTGAGE NOTES NOT RECORDED OR MENTIONED IN THE REGISTRY.—When a mortgage credit is recorded in the registry in favor of a mortgage creditrix without her husband having any intervention therein, such creditrix and her heirs are the only ones who have the right to collect such credit, and neither the husband nor his heirs can claim any title whatever to same, even when the mortgage deed sets forth that the notes are issued in favor and to the order of the husband, because such documents were not mentioned in the registry.

ID.—EXTINGUISHMENT OF MORTGAGE OBLIGATION—PAYMENT—MERGER OF THE RIGHTS OF CREDITOR AND DEBTOR.—In accordance with the foregoing doctrine, when it appears from the record that part of the installments of the mortgage obligation were paid to the wife, and the installments remaining due at her death were assigned by the heirs possessing them to the person

who thereafter acquired the mortgaged properties, the mortgage obligation became in this manner extinguished in part by payment and in part by merger of the rights of creditor and debtor, in accordance with section 1124 of the Civil Code.

MORTGAGE NOTES—ABSENCE OF A RECORD OF THEM IN THE REGISTRY—ITS EFFECTS—ACTION FOR THEIR RECOVERY.—The owner of property affected by a mortgage credit extinguished by payment and merger of rights, is entitled to a judicial cancellation of same in the registry, without the necessity of showing previously the cancellation of mortgage notes issued to the order of the husband of the owner of the mortgage credit as shown by the registry, such notes never having been recorded in the registry, and therefore the three last paragraphs of section 82 of the Mortgage Law are not applicable. In the case that there exist negotiable mortgage notes not recorded in the registry, the action for their recovery must be personal and not a mortgage action.

CANCELLATION OF MORTGAGE—RIGHT OF ASSIGNEE TO OPPOSE THE CANCELLATION.—The assignee of a mortgage credit cannot oppose the cancellation of same. Such opposition can only be made by the assignor and his successors in interest.

ID.—EXTINGUISHMENT OF MORTGAGE—PAYMENT AND ASSIGNMENT OF INSTALLMENTS—OPPOSITION TO ITS CANCELLATION.—When it has been shown at the trial that a mortgage has been extinguished by payment and merger of rights, the successor in interest of the mortgage creditor cannot oppose its cancellation.

LAW OF CONTRACTS—CANCELLATION OF MORTGAGE CREDIT—APPLICATION OF SECTION 82 OF THE MORTGAGE LAW.—The law of contracts has not been violated by the judgment ordering the judicial cancellation of a mortgage credit extinguished by payment and merger of rights without previously requiring the cancellation of the negotiable notes to the order of the husband of the mortgage creditrix; these notes not being recorded in the registry, paragraph four of section 82 of the Mortgage Law is not applicable to the case.

PERFORMANCE OF CONTRACT—UNRECORDED MORTGAGE NOTES PAYABLE TO BEARER—APPLICATION OF SECTION 1157 OF THE FORMER CIVIL CODE.—A judgment ordering the judicial cancellation of a mortgage without previously requiring the cancellation of negotiable notes which have not been recorded in the registry, does not violate section 1157 of the former Civil Code, but does comply with the requirements of mortgage contracts.

UNRECORDED MORTGAGE NOTES—APPLICATION OF SECTION 77 OF THE MORTGAGE LAW.—Section 77 of the Mortgage Law does not apply in a case where mortgage notes have not been recorded in the registry, nor therefore is there any necessity of cancelling any records.

ID.—REAL OWNER OF A MORTGAGE—RECORD IN THE REGISTRY.—The real owner of a mortgage according to the registry, is that person in whose favor it is recorded, and on his death his heirs, and not the holders or endorsees of the mortgage notes issued to the order of the husband of the owner of the mortgage, which were never recorded in the registry.

The facts are stated in the opinion.

*Mr. López Landrón* for appellants.

*Mr. Alvarez Nava* for respondents.

MR. JUSTICE HERNÁNDEZ delivered the opinion of the court.

The firm of Rubert Hermanos, domiciled in this capital, brought an action in the District Court of San Juan against the heirs of María Luisa López, her successors in interest or their heirs, and at the same time against the heirs of Reverend Antonio García, his successors in interest or their heirs, praying the court to render judgment setting aside two mortgage credits, one for 66,727.99½ *pesos*, of the money formerly in circulation, in favor of María Luisa López, and the other for 179,230 *escudos*, equivalent to $88,615 of the same former money, in favor of Reverend Antonio García, ordering the cancellation of the two mortgages constituted to secure said credits on five lots of land described in the complaint, and that an order be issued for this purpose in duplicate to the registrar of property of the district, containing the necessary insertions, with the costs against the defendants, opposing the action.

Rubert Hermanos alleged as the fundamental fact of their complaint, that the mortgage obligation in favor of María Luisa López, aside from the fulfillment thereof by payment, was extinguished by prescription, because more than 30 years had elapsed since he year 1872, when the last installment thereof fell due, and that the other mortgage obligation constituted in favor of Reverend Antonio García had also become extinguished, partly by payment, and partly because the character of creditor and debtor had become merged in the same person.

During the argument, the plaintiffs amended one of the allegations of fact of the complaint, that is to say the third, in the sense that the mortgage obligation constituted in favor of María Luisa López had been paid and settled in full, and was furthermore extinguished by prescription, for the reason they had stated.

The brother and sisters Teresa Pascual López, the widow of Pesquera, Carmen Pascual López, accompanied by her husband, Julio Otero, and Federico Pascual López, all three in

their own right and in addition for their brothers Ramón Pascual López, being absent or dead, and his whereabouts unknown, and José Cayetano Pascual López, who had died without ascendants or descendants, contested the complaint, as did Cruz Castro, as the successor in interest of Reverend Antonio García, all of them praying for judgment holding that the said mortgage credits had not been extinguished either by payment or prescription, nor the interest thereon, but that on the contrary they are in force in every respect in the registry of property, and they must continue so until they authentically appear to have been settled, with all the costs against the plaintiffs.

Subsequently, the defendants supplemented the allegations of fact of their answer and amending it they prayed for judgment requiring the plaintiffs, Rubert Hermanos, by way of counterclaim, to comply in every respect with the contract of sale approved by order of February 1, 1893, by virtue of which José Gallart, the predecessor in interest of Rubert Hermanos had acquired the San Vicente estate subject to the two mortgages mentioned, and make a liquidation of the payments and interest of said two mortgages, which were prior to that in favor of Gallart which gave rise to the public sale, which liquidation must be made with the intervention of the persons who had acquired the preferred mortgages or to whom they had been assigned, Rubert Hermanos paying any balance due.

The trial having been had, the court rendered judgment on February 18, 1907, reading as follows:

"This case having been called for trial in its order on the calendar, and the plaintiff having entered an appearance through their counsel, Attorney Antonio Alvarez Nava, and the defendants, Teresa Pascual López, the widow of Pesquera, Carmen Pascual López, accompanied by her husband Julio Otero and Federico Pascual López all three in their own right and as the representatives of their brothers Ramón Pascual López, absent or deceased in a place unknown, and José Cayetano Pascual López, who had died without descendants or ascendants, through their Attorney Rafael López Landrón, and also Cruz Castro;

represented by the same attorney and representing the rights of
Reverend Antonio García, and the default having been entered of the
other persons who might be heirs of María Luisa López and of Rev-
erend Antonio García and successor in interest of the same of their
heirs, the parties present, announced their readiness for trial.

"The allegations of the parties were read, and the plaintiff pre-
sented documentary evidence consisting of 16 public documents which
were admitted, and the defendants introduced the testimony of wit-
nesses, which was heard, documentary evidence consisting of two
deeds, which were also admitted, and certain abstracts from the record
or execution proceedings, prosecuted by José Gallart, the heir of Juan
Forgas, against the Estate of Leonardo Igaravídez, such abstracts
not being certified, but this kind of evidence was accepted by the plain-
tiff and admitted by the court; but, upon considering the case for
decision, this court has been unable to find in the archives of the same
the entire record of such proceedings, but only two sections thereof
which contain only three of the points of the eleven presented by the
defendants as evidence.

"And the court, after having taken into consideration the allega-
tions, the evidence and the arguments, holds that the facts and the
law are in favor of the plaintiff and against the defendants with
regard to their amended answer, and, therefore, decides that the tracts
of land described: (*a*) Lot of land "Cibuco" of 1,197 *cuerdas;*
(*b*) San Vicente of 166 *cuerdas;* (*c*) "Montefrío," 147 *cuerdas;*
(*d*) "Canto Blanco," 402 *cuerdas;* (*e*) "Cerro Gordo," 10 *cuerdas;*
which formed part of the San Vicente estate are relieved of the fol-
lowing mortgages, because of payment thereof having been made:

"One constituted on January 25, 1864, by Manuel Antonio López
in favor of María Luisa López, for the price of $66,727.99½ of the
money then current, and the other constituted on October 15, 1866, by
L. Igaravídez in favor of Reverend Antonio García for 179,230 *escu-*
*dos,* by reason of the same having also been paid in full, including the
installments assigned to Latimer & Co., and that by virtue of this de-
cision an order issue to the registrar of property of this district in
duplicate with the proper insertions, to cancel the records of such
liens in his books, with the costs against the defendants.    Pedro de
Aldrey, Judge of the District Court of San Juan, P. R."

On the 25th of said month of February counsel for the de-
fendants filed with the secretary of the court a notice of his
intention to apply for a new trial by motion, to be based on

subdivisions one, two, three and six of section 221 of the Code of Civil Procedure, and to this end he filed a statement of the case, which was approved with amendments by the judge on June 10, 1907, and in addition he specified the particulars in which, in his opinion, the evidence was insufficient to support the decision of the court, also indicating the errors of law committed.

The specification of the particulars in which the evidence is against the decision of the court and the allegation of the errors of law committed, are drawn in the following terms:

Specification of the particulars in which the evidence is opposed to the decision of the court.

"1. The court assumes that the mortgage deed of January 25, 1864, determines as the owners of the mortgage credit solely and exclusively the heirs of María Luisa López or their successors in interest. And this is manifest by a material error because according to that deed the real owners of the mortgage credit are the successors in interest of Ramón Pascual as the holders or last endorsers of the notes payable to order secured by mortgage.

"2. Error as to the evidence of the full payment of said mortgage credit, without the thing having been delivered in full, or the prestation of which the obligation consisted having been made.

"3. Error in the payment or in weighing the evidence, by assuming notes payable to bearer which have not yet been withdrawn to be cancelled.

"4. A material error in assuming that the deeds of August 28, 1869, January 24, 1883, and November 9, 1895, constituted receipts in full, when they were merely assignments or transfers of the live and subsisting rights which they believed or might originally have had in favor of their predecessor in interest, María Luisa López or her heirs.

"5. A material error in the judgment of the court in assuming that the ownership of the entire mortgage credit of January 25, 1864, and of the property subject thereto had become merged in José Gallart.

"6. A material error in assuming the execution of receipts in full for said credit with the intervention of all the interested debtors and creditors.

"7. A material error as to the evidence of the form of payment stipulated in the deed of January 25, 1864, by assuming that a receipt

in full is sufficient, without collecting and returning, as stipulated, the notes secured by the mortgage.

"8. An error in the evidence resulting from the certificate of the registry of property, because the judgment fails to take into consideration that one of the mortgage notes of January 25, 1864, is subject to third person, without whose consent it cannot be cancelled or destroyed.

"9. That there was also a material error as to the evidence, consisting of the deeds of assignment referred to in favor of José Gallart, by assuming that the mortgage notes payable to the order of Ramón Pascual are therein acknowledged to have been paid, when what is acknowledged and declared is that they are in the possession of third persons such as Igaravídez and the heir of Pascual, who are the debtors.

"10. A material error as to the evidence of these deeds executed as the assignment of existing credits and not as real receipts in full.

"11. A material error as to the evidence of the deed of August 28, 1889, because the judgment necessarily assumes in its adjudging portion that the assignment of part of the last installments or mortgage notes was made to the committee of the creditors of Igaravídez, as the assignee of the original owner of the notes, Ramón Pascual.

"12. A material error contained in the adjudging portion of the judgment, because it assumes that the latter was rendered after the citation and hearing of all the persons interested with rights acquired in the deed of January 25, 1864, such as the successors in interest of the drawer of the notes and the successors in interest of the first holder of said notes.

"13. A material error in the evidence relating to the payment, the adjudging portion of the judgment necessarily assuming that the real creditors have been paid the entire debt in the special form agreed on, for the account of the personal and mortgage debtors.

"14. An error in the evidence of the public sale by Gallart of part of the estate of San Vicente, assuming that Gallart and his assignees did not bind themselves in an express or implied manner in the proposal for the sale approved, to cancel all the original rights derived from the deed of January 25, 1864, in the proper legal form, and in a complete and satisfactory manner.

"15. An error of fact in assuming that the fundamental allegation of the plaintiff to cancel the mortgage of October 15, 1866, consists in payment and not in curing defects.

"16. An error of fact as to the termination on the action for the cancellation of the mortgage deed of October 15, 1866.

"17. An error of fact in assuming that all the parties to the deed of partial assignment of that of October 15, 1866, had been cited and heard.

"18. An error of fact in the adjudging portion of the judgment, in assuming that a receipt in full had been presented, sufficient to warrant the cancellation in every respect of the mortgage deed of October 15, 1866.

"19. An error of fact committed at the trial and excepted to by the defendants, in the judgment assuming that the plaintiff had in some way alleged in the complaint the fact of the full payment of the mortgage of January 25, 1864.

### ERRORS OF LAW.

"1. At the trial, by permitting the plaintiff, after all the evidence had been heard, to amend the complaint by contradictory allegations.

"2. In the judgment, by manifestly deciding against the defendants, after having expressly left unconsidered most of the documentary evidence presented by them, admitted by the judge and accepted as relevant.

"3. Violation of the law of contracts of January 25, 1864, relating to cancellations, in so far as the judgment fails to consider the return, payment and destruction of the mortgage notes:

"4. Violation of this mortgage contract by the acceptance of a form of payment different from that agreed on and contrary to its nature.

"5. Violation of article 1157 of the former Civil Code, section 1125 of the modern code, in that the judgment considers the two mortgage debts to have been paid in full, without the proper prestations having been made.

"6. Violation of Law 3, title 14, *partida* 5, and the doctrine of payment established by the Civil Code, because it is assumed to have been properly made to persons in whose favor the obligations had not been constituted.

"And, therefore, violation of article 1157 of the former Civil Code.

"7. Violation of article 1170 of said Civil Code, by considering valid a payment by persons who did not have the free disposition of the thing due and the capacity to alienate it.

"8. Violation of article 77 of the Mortgage Law, by considering the mortgage installments to be extinguished as to third persons in the registry of property.

"9. Violation of subdivision two of article 79 of the Mortgage Law, by considering the mortgages canceled without their right having been extinguished.

"10. Violation of article 20 of the Mortgage Law, in subdivisions one, two and four thereof, by ordering the cancellations, without the intervention of all the persons appearing in the registry to be affected by the cancellation and violation, therefore, also of article 82 of said Mortgage Law.

"11. Manifest violation of subdivision four of said article 82 of the Mortgage Law, by ordering the cancellation in the registry of the mortgage without recovering or cancelling and perforating the notes payable to order secured by the mortgage. And, therefore, violation of subdivision two of said article.

"12. Violation of the fourth paragraph of article 161 of our Mortgage Law, by assuming that the owners of the mortgage of January 25, 1865, which is security for the notes payable to order are persons other than the holders or endorsees thereof.

"13. Violation or article 1867 of the former Civil Code, by assuming that the mortgage belongs to a person other than the owner of the principal credit.

"14. Violation of articles 1860, subdivisions one and two, 1450, 1500, 1501 of the Civil Code, which establish the indivisibility of a mortgage. And the obligations of duly performing a contract of purchase and sale at public auction after it shall have been perfected with relation to the payment of the price and prior charges in order to effect their cancellation.

"15. Violation of the doctrine established in decisions of February 5, 1863, February 7, 1896, February 12, 1896, March 2 and February 13, 1897, March 7, 1895, April 5, 1898, May 17, 1898 and December 6, 1891, which remove the plaintiff Rubert Hermanos from the class of third persons as to the contract of public sale, on account of one of their partners having taken part therein, and because the plaintiff firm lacks a title previously recorded and the other necessary requisites.

"16. And, finally, the violation of the general provisions of law, supplementary and related to the provisions above cited."

The court rendered a decision on the motion for a new trial, as follows:

"*Decision.*—After judgment had been rendered in this action the defendants filed a motion for a new trial which was fully argued.

"Among other grounds the motion is based upon the allegation that the court in deciding the case, did not consider nor take into account certain particulars of the evidence of the defendants.

"As a matter of fact this did occur, because the defendants having presented as their evidence certain particulars from the record of execution proceedings prosecuted by José Gallart, the heir of Juan Forgas, against the estate of Leonardo Igaravídez, not presented ·in certified form, but both parties agreeing that they should be examined in the record on file in the archives of this court, when a search was made in order to examine and consider the same, it was impossible to find them, notwithstanding the efforts made. But the defendants in preparing their statement of the case for the motion for the new trial, included all these particulars of the record of the execution proceedings lost, because at that time they had been found.

"Having been included, therefore, in the statement of the case, the court, after taking them into consideration, finds that they would in no way change the result arrived at in this action without them.

"For these reasons and holding that a new trial should not be granted for any of the other reasons alleged the court decides to dismiss, and does dismiss, the motion of the defendants in this action for a new trial.

"Done in open court this 8th day of January, 1908. (Signed) Pedro de Aldrey, Judge. Attest: (Signed) José E. Figueras, Secretary, By A. Marín Marién, Deputy Secretary."

Counsel for the defendants took an appeal from the foregoing decision to this Supreme Court on January 13, which appeal is now awaiting decision, after consideration of the briefs of the parties, whose counsel did not make any oral arguments.

Let us examine the facts as shown by the evidence heard at the trial in order to decide whether the final decision of the case is contrary to such facts, and whether the errors of law alleged to have been committed by counsel for the appellant were really committed.

The judicial discussion was confined to these points in view of the grounds alleged in the lower court as well as in this Supreme Court in support of the motion for a new trial.

The facts, as they appear in the statement of the case, are the following, which we shall set forth numerically:

"1. By a petition dated January 4, 1889, Manuel Rossy y Guerra, as the known attorney in fact of José Gallart, applied to the proper court of this city for execution against the property of the Estate of Leonardo Igaravídez, for the sum of $66,564.32 of the money at that time current, said sum being the amount of the matured installments of a mortgage obligation contracted on August 26, 1875, with the agreed interest at the rate of 1 per cent per month from the date of the maturity of each installment compounded annually, until final payment, and the costs already incurred and which might be incurred thereafter, and that it be ordered that the attachment be levied on the San Vicente plantation situated in the judicial district of Vega Baja, specially mortgaged to secure payment, including its appurtenances which were described in said mortgage deed, and including the improvements subsequently made by buildings, machinery, and the apparatus on said estate for the manufacture of sugar, the transportation of sugar cane, etc.

"2. The execution prayed for having issued by order of January 21, 1889, and an order for the public sale having issued on December 5th of the following year for the sum of $74,046.32, the sale was held simultaneously in San Juan and in Vega Baja on November 5, 1892, and January 26, 1893, no sale taking place owing to the fact that no bidders appeared.

"3. Before the sale of the property in question was held, the Registrar of Property of San Juan certified that the San Vicente plantation was subject, among other charges to a mortgage derived from the unpaid price of an interest in said property which Manuel Antonio López had purchased of his sister, María Luisa López, the wife of Ramón Pascual, by deed of January 25, 1864, executed before Notary Demetrio Jiménez, which mortgage amounted to $66,727.995 of the money then current in trade, which amount was to be paid in a number of installments, namely: Ten thousand dollars in March, 1864; $8,000 in the month of January in each of the years from 1865 to 1871 and $727,995 in January, 1872, according to the record which appears at folio four, reverse side, number eight of book 19, of the old register, of which mortgage Ramón Pascual assigned to Rafael Palacios, the installment of 16,000 escudos due in January, 1871, as security for his brothers-in-law, Jacinto and Juan Vicente López for the sum of 10,000 escudos which the latter owed Palacios on secured notes, the former for

the sum of $3,000 and the latter for the sum of $2,000, foreign money, according to the record which appears at folio 21, reverse side, number 44, of book 22, of the old register.

"4. The register also certified that the estate of San Vicente was subject to another mortgage derived from the unpaid price constituted by Leonardo Igaravídez in favor of Rev. Antonio García upon purchasing from the latter an interest in the various appurtenances of the old estate of San Vicente, according to deed of October 15, 1866, executed before José Félix Lajara, a notary of Vega Baja, recorded at folio 59, reverse side, number 127 of book 20 of the former mortgage registry; in the margin of this record appears a memorandum to the effect that Teresa López, with the assent of her husband, Ezequiel Castro, had assigned and conveyed to Messrs, Latimer & Fernández of San Juan, the amount of 67,946 *escudos* of the credit recorded, that is to say 13,946 *escudos* of the payment falling due in May, 1872, and the entire payments falling due in May, 1873, 1874, 1875, and 1876, which assignment was made to said Latimer & Co. by deed executed in their favor by Teresa López in this city on October 5, 1871, before Notary Mauricio Guerra; according to another note in the margin of the same record, Latimer & Co., by receipt executed before Notary Mauricio Guerra, the date of which is not stated, acknowledged the receipt from Igaravídez of the payment due in 1872.

"5. On January 31, 1893, Manuel Rossy Guerra, the attorney in fact of Gallart, prayed for the award of the property offered at sale of the Central San Vicente for two-thirds of the price which served as a basis for the second announcement of sale, deducting from such price the value of the property or effects missing at the time of the delivery and that of the prior mortgages imposed on the old estate of San Vicente or the undivided interests thereof, which Gallart would acknowledge or pay if it should be proved that they had not been paid, according to the liquidation to be made in due time. The court granted this prayer by order of February 1, 1893, under the terms requested, the delivery of all of the property of the estate of San Vicente sold being made to Luis Rubert as the general agent of the execution creditor, José Gallart.

"6. By deed of February 24, 1896, executed before Notary Mauricio Guerra, the brothers Juan, Miguel and Guillermo Rubert and Catala, purchased of their brother Luis Rubert y Catala, as the attorney in fact of José Gallart, for the price of 100,000 provincial *pesos,* equivalent to $60,000 payable in annual installments, the property of the Central San Vicente awarded to Gallart.

"7. By public deed of January 25, 1864, María Luisa López, accompanied by her husband, Ramón Pascual, sold to her brother, Manuel Antonio López Martínez, her interest, which she had acquired by inheritance from her legitimate father, Jacinto López, in the estate of San Vicente, for the same price for which it had been awarded—that is to say, for $66,727.995 of the foreign money then circulating in trade, of which amount the vendee agreed to pay the vendrix $10,000 in the month of March, 1864; $56,000 in seven installments of $8,000 each every month of January from 1865 to 1871, and the balance of $727.995 in January, 1872 ,the interest in the estate of San Vicente sold being mortgaged to secure payment; and it was further agreed that the purchaser, Manuel Antonio López Martínez was to give seperate notes for each installment, which he did, payable in favor and to the order of the husband of the vendrix, Ramón Pascual, for the purpose of facilitating by means of such documents which were delivered at once, any negotiation which might be suitable or necessary, although the vendrix assumed the obligation that in the event of negotiating any or all of said notes together or separately, she would first advise her said brother, who was to be given preference in the negotiation of executing in favor of the purchaser, Manuel Antonio López, or the person representing him, the proper receipt in full, upon payment of all the installments or of the notes issued.

"8. María Luisa López died on May 30, 1869, having empowered her husband to dispose of her property by testament and in the will which was made under such power by the commissioner, Ramón Pascual, the latter constituted as the only and universal heirs of María Luisa López, her legitimate surviving children—that is to say, Ramón, Teresa, Federico, José Cayetano and Carmen Pascual López—because prior to the death of María Luisa, another son named Jacinto had died without leaving any succession.

"9. By public deed of August 28, 1889, one of the said heirs—that is to say, Teresa Pascual y López—accompanied by her legitimate husband, Ramón Pesquera y Goenaga, assigned, conveyed and transferred to Julián Blanco y Sosa, *as the representative of the recognized creditors of Leonardo Igaravídez and the administrator of the Central of San Vicente,* for the price and sum of $1,000 Mexican money, her fifth interest in the sum of $8,727.99, which represented the payments maturing in the years 1871 and 1872, covered by the two notes still held by the Estate of María Luisa, of which notes she delivered to Blanco the first one which had fallen due in January, 1871, the only one in her possession, as she did not know where the note corresponding to the last installment of 1872 was, Teresa Pascual López acknowledging in

said document that Manuel Antonio López had in due time paid the first two installments which had fallen due in March, 1864, and January, 1865, and upon his death his widow and executrix, María del Carmen Landrón had paid the third installment falling due in January, 1866, receiving the proper note, and those falling due the next four years from 1867 to 1870, had been paid and received by her second husband, Leonardo Igaravídez, the balance due from the Estate of Antonio López to that of María Luisa López becoming reduced to the sum of $8,727.99, to which the last two installments falling due in 1871 and 1872 referred.

"10. By public deed of January 24, 1893, José Cayetano and María del Carmen Pascual López, in their own right and José Cayetano in addition as the attorney in fact of his legitimate brother, Federico Pascual López, assigned to José Gallart y Forgas, represented by Luis Rubert y Catala, for $5,100 Mexican money, which they received at the time of the execution of the deed, their shares in the last two installments referred to in the deed of sale and mortgage executed on January 25, 1864, by María Luisa López, in favor of Manuel Antonio López y Martínez, making a similar acknowledgment to that made by Teresa Pascual López in the deed of August 28, 1889, with respect to the payment of the previous installments.

"11. By another public deed of November 9, 1895, Federico Pascual y López, as the legal administrator of his brother, Ramón Pascual López, assigned to José Gallart y Forgas, represented by Luis Rubert y Catala, for the price of $1,700 Mexican money, his interest in the last two installments of the price for which María Luisa López had sold to Manuel López her interest in the ownership of the estate of San Vicente, which last two installments were the only ones left unpaid, as the first two had been paid by the purchaser himself, the third by his widow, María del Carmen Landrón and the other four by the second husband of the latter, Leonardo Igaravídez, when he was the possessor of the estate of San Vicente.

"12. By public deed of October 15, 1866, Rev. Antonio García y Rivera sold to Leonardo Igaravídez, his interest in the estate of San Vicente for the price of 219,230 *escudos* of the foreign money then current, of which sum the vendor acknowledged to have received 40,000 *escudos,* the purchaser agreeing to pay the remainder of 179,230 *escudos* at the rate of 16,000 *escudos* per annum, in the month of May of the following years from 1868, when the first installment would fall due, until 1879, when the last installment would fall due—that is to say, the balance of 3,230 *escudos*—mortgaging the interest sold to secure the payment.

"13. Rev. Antonio García died on April 9, 1869, leaving a will made on March 30 of the same year, by which he constituted as his only and universal heir, Teresa López, who died leaving a will in which she constituted her husband, Ezequiel Castro y Díaz her sole and universal heir; the latter by public deed on December 23, 1869, declared and acknowledged that the previous installments of the mortgage credit held by his wife, Teresa López, against Leonardo Igaravídez, corresponding to the years 1868, 1870 and 1871, and part of the installment falling due in the year 1872, had been paid to Teresa López before her death, and the other part of the installment falling due in 1872 and the installments for the years 1873, 1874, 1875 and 1876, had been assigned by said Teresa to Latimer & Co., and she remained the owner, therefore, of the installments falling due in 1877 and 1879, amounting together to 17,615 *pesos,* of which sum part was received by Teresa and her husband, the remainder of the credit being reduced to $6,900, foreign money current, according to the liquidation made with Igaravídez in February, 1888, of which sum Igaravídez had paid him $3,900 and Julio Blanco the remaining $3,000, $700 as the provisional administrator of the property of the deceased Igaravídez, and $2,300 as administrator of said Igaravídez and as the representative of the committee of creditors, for which reason he executed a receipt in full, not only for the $2,300 last received, but also for the 179,230 *escudos,* representing the whole credit. The property mortgaged is not described in this deed:

"14. By deed of June 7, 1872, Carlos A. Hoard, as the manager of Latimer & Co., executed in favor of Leonardo Igaravídez a receipt for the mortgage which had been held by Rev. García, as to the installment which fell due the end of May, 1872.

"15. By another deed of July 12, 1887, Latimer & Co. and Leonardo Igaravídez made a liquidation of the amount of the credit of the former against the latter by reason of the installments assigned by Teresa López and they fixed the amount thereof as principal and interest, at $34,298.94 executing a receipt in the deed itself for $1,000, without describing the property subject to the mortgage.

"16. By deed of July 15, 1887, Guillermo Latimer, as the Liquidator of Latimer & Co., assigned to Teresa Prajedes Turull y Terreforte, the wife of Alejandro Cabra, the sum of $8,000 of the mortgage credit of October 15, 1866, constituted by Leonardo Igaravídez, in favor of Rev. García.

"17. By deed of January 25, 1893, Teresa Turull de Cabra, with the permission of her husband, acknowledged the receipt of $3,000 of

the $8,000 assigned by Latimer & Co., and assigned the remaining $5,000 to José Gallart y Forgas, without the property mortgaged being described in this deed.

"18. By deed of December 22, 1892, Latimer & Fernández, the assignees of Latimer & Co. in liquidation, assigned to José Gallart y Forgas, four installments, amounting to $7,000 and the interest thereon, of the mortgage of Igaravídez, without the estates subject to the payment of this credit being described in said deed.

"19. By deed of June 30, 1893, Latimer & Fernández declare and acknowledge that Latimer & Co., assigned to them $11,452.38 of the mortgage credit against Igaravídez, and that of this sum they assigned $7,000 to José Gallart and received the balance of $4,452.38 from the said José Gallart, without the estates subject to the payment of the credit being therein described.

"20. By deed of October 2, 1894, the firm of Latimer & Co. in liquidation, represented by Guillermo Latimer, who styles himself its liquidator, assigned and transferred to Salvador and Carmen Nadal of Mayagüez the sum of $1,450.46 in current money, of the last installment amounting to $2,298.44, maturing June 30, 1897, owed them by Leonardo Igaravídez and subsequently by José Gallart as the possessor of the property subject to the mortgage, which property is not described in the deed.

"21. By deed of June 8, 1895, Salvador and Carmen Nadal, represented by their attorney in fact, Tomás Caballero, executed a receipt for the $1,450.46 which according to the deed of October 2, 1894, had been assigned them from the credit against Igaravídez.

"22. By deed of August 21, 1895, the Colonial Bank of Saint Thomas executed a receipt to José Gallart, represented by his attorney in fact, Luis Rubert, for the sum of $3,793.34 and $753.74—that is to say, for the total sum of $4,547.08, current money—as the equivalent thereof at 6 per cent of the $4,000 and $848.48, respectively, which give a total of $4,848.48 of the aforesaid current money, with which Gallart pays like amounts due the said bank by assignment of Latimer & Co. in liquidation, as the amount of the installment maturing on April 30, 1896.

"23. Finally, in the same deed of August 21, 1895, it appears that Latimer & Co. assigned to the Colonial Bank of Saint Thomas the installments falling due in 1895, 1896 and 1897, of the credit which the former held against Igaravídez making a total of $12,396.10, the as-

signee bank stating that Rubert Hermanos by direction of Luis Rubert, and the latter as the attorney in fact of José Gallart paid it the first installments past due, receiving in exchange receipts in cancellation, and it acknowledged furthermore in the same deed that it had received the installments which would fall due in 1896 and 1897, for which reason the said bank declares the debt to have been settled as to the amount which had been assigned it, and cancelled with respect to the mortgage which secured it.''

Upon a consideration of this evidence in relation with the judgment rendered by the District Court of San Juan on February 18, 1907, we do not find that it is opposed to such judgment from the various standpoints which can be discussed of those mentioned in the specification of particulars in which, according to the appellant, the judgment of the lower court is not supported by the evidence.

There are 19 particulars, and only those bearing numbers one, two, four, five, six, seven, eight, nine, 10, 11, 13, 14 and 18 are relevant to the end sought, because those numbered 12, 15, 16, 17 and 19 bear no relation, as a mere perusal thereof will show, to the findings upon the evidence heard at the trial.

Let us consider the judgment appealed from in so far as it affects the heirs of María Luisa López.

As recited in the certificate issued by the Registrar of Property of San Juan which was considered in awarding to José Gallart the estate of San Vicente in the execution proceedings prosecuted against the estate of Leonardo Igaravídez, said estate was subject to a mortgage credit for $66,-727.995 of the money then current in trade, which credit had been constituted by public deed of January 25, 1864, by Manuel Antonio López in favor of María Luisa López.

Of this credit the only and exclusive owner according to the register appears to be María Luisa López, without her husband, Ramón Pascual, having any intervention therein, because although it is stated in the said deed that Manuel Antonio López issued separately different notes in favor and to the

order of Ramón Pascual, to facilitate for the creditrix the negotiation of the different installments of said credit, such documents are not even mentioned in the registry, and, therefore, with respect to José Gallart who did not take any part in the said deed of January 25, 1864, and who, consequently, was a third person according to article 27 of the Mortgage Law, María Luisa López, and owing to her death, her heirs, Ramón, Teresa, Federico, José Cayetano and Carmen Pascual López were the only ones who had the right to collect said credit, and Gallart had nothing to do with respect to the payment with Ramón Pascual and his heirs.

As of the said mortgage obligation, according to the acknowledgment of the five heirs mentioned in public deeds of August 28, 1889, January 24, 1893, and November 9, 1895, to which we have made reference, all of the installments of the mortgage obligation in favor of María Luisa López had been paid with the exception of the last two, and on the other hand Teresa Pascual López had by the first of said deeds conveyed and transferred to Julián Blanco y Sosa, *as the representative of the recognized creditors of Leonardo Igaravídez and the administrator of the Central of San Vicente,* her interest in these two installments, all that remained unpaid was the interest therein of the other four heirs of María Luisa López, that is to say Ramón, Federico, José Cayetano and Carmen Pascual López. José Gallart treated with the latter, represented by Luis Rubert for the negotiation of their interest or shares in the ownership of such installments, and they assigned them to him by public deeds of January 24, 1893, and November 9, 1895.

Thus the mortgage obligation which was a charge on the San Vicente Central in favor of María Luisa López and at the time of her death in favor of her heirs, became extinguished by payment with regard to the installments which had matured to the year 1871, and with regard to the other two installments by the merger of the rights of creditor and debtor,

in accordance with the provisions of section 1124 of the Civil
Code, which reads as follows:

"Obligations are extinguished:
"By their payment or fulfillment.
"By the loss of the thing due.
"By the remission of the debt.
"By the merging of the rights of the creditors and debtor.
"By compensation.
"By novation."

In its judgment the lower court has set out on the assumption that the successors in interest of Ramón Pascual, according to the registry of property have no interest whatsoever in the mortgage credit of María Luisa López, and for this reason without requiring the cancellation of notes payable to order which have not been taken up, which notes have not been recorded in the registry and without considering whether or not such notes now exist, he has held that the mortgage credit referred to in the deed of January 25, 1864, was extinguished by payment and the merging of the rights of the creditor and debtor. In this respect the lower court decided in accordance with the law, because the last three paragraphs of article 82 of the Mortgage Law refer to the existence in the registry of property of records made to secure sums represented by securities payable to bearer transferable by indorsement, which is not the case with reference to the notes issued in favor and to the order of Ramón Pascual, according to the deed of January 25, 1864. If some of these notes exist, the action for their recovery would be personal and not a mortgage action, and the existence or none existence of such documents would be of no interest to the plaintiff firm, as the successor in interest of José Gallart.

It is true that the deeds of August 28, 1889, of January 24, 1893, and of November 9, 1895, are more than receipts, assignments and transfers of the rights which the heirs of María Luisa López had under the mortgage deed of January 25, 1864,

but it must be acknowledged that by virtue of these deeds, the assignees, who were debtors, also assumed the character of creditors, thus both capacities became merged in the same person and the credit assigned became therefore extinguished. Even on the assumption that the capacities of creditor and debtor had not become merged in Julián Blanco y Sosa by reason of the deed of August 28, 1889, which was executed in his favor by Teresa Pascual López, Blanco in having accepted the character of representative of the recognized creditors of Leonardo Igaravídez and administrator of the Central of San Vicente, the assignor Teresa Pascual López could not now for this reason oppose the cancellation of that part of the credit which she assigned to Julián Blanco y Sosa, because such opposition could be made only by the said Blanco and his successors in interest, as the assignees of the former, and the latter have not appeared to oppose the complaint. Blanco y Sosa would have been an acquirer of rights of Teresa Pascual López and would have subrogated the latter in such rights.

With regard to the judgment with relation to the successor in interest of Rev. Antonio García, it was shown at the trial by documentary evidence: 1. That by public deed of October 15, 1866, Leonardo Igaravídez acknowledged in favor of Rev. Antonio García Martínez, a mortgage credit for 179,230 *escudos,* payable in a number of installments, which mortgage credit is now a charge on property belonging to Rubert Hermanos which the latter acquired by deed of February 24, 1896, from José Gallart, to whom such lands had been awarded; 2. That said credit was constituted by a number of installments of $8,000 each, falling due in May, 1868, 1869, 1870, 1871, 1872, 1873, 1874, 1875, 1876, 1877 and 1878, and by another installment of 3,230 *escudos*—that is to say, $1,615—also falling due in May, 1879; 3. That Ezequiel Castro Díaz, the heir of Teresa López, who in her turn was the heir of Rev. García, confessed by deed on December 23, 1889, that the installments due in the years 1868, 1869, 1870, 1871, 1877, 1878 and 1879 had been paid, and a part of the installment of 1872, the remainder of

this installment and the entire installments due in 1873, 1874 and 1876 having been assigned to Latimer & Co., who collected the unpaid part of the installment due in 1872, and upon a liquidation and arrangement with Igaravídez, they fixed the principal and interest of the installments due in 1873, 1874, 1875 and 1876, at the sum of $34,298.94, of which sum Latimer & Co. received $1,000 and assigned $8,000 to Teresa Praxedes Turull, their credit becoming reduced to $25,298.94; 4. That Teresa Praxedes Turull received $3,000 of the $8,000 assigned her by Latimer & Co., and assigned the remaining $5,000 to José Gallart, the person to whom the estates encumbered had been awarded; 5. That Latimer & Co. assigned from the $25,298.94, which they still held, $11,452.38 to Latimer & Fernández, retaining $13,846.56. That the assignees collected $4,452.38 from José Gallart y Forgas, and assigned $7,000 to the same gentleman; 7. That $13,846.56 was still held by Latimer & Co., of which they assigned to Salvador and Carmen Nadal, $1,450.46, retaining $12,396.10; 8. That Salvador and Carmen Nadal received from José Gallart the amount of the assignment, and Latimer & Co. assigned the $12,396.10, the remainder of their credit, to the Colonial Bank of Saint Thomas, which collected it from José Gallart.

Therefore, the grounds advanced to show that the judgment of the lower court is contrary to the evidence cannot be sustained and it is not necessary to discuss these points seperately, because those relevant to the end sought are destroyed in view of the findings of fact set forth and the considerations of law which are applicable thereto.

As will have been observed, there is sufficient evidence to prove that in accordance with the provisions of section 1124 of the Civil Code transcribed above the mortgage obligation referred to in the deed of October 15, 1866, has been extinguished. The Judgment is supported by the evidence. Cruz Castro at the present time has no interest whatsoever in said credit and therefore has no right to oppose the cancellation thereof.

Let us now consider whether the errors of law alleged by the appellant have been committed by the lower court, upon which he based his motion for a new trial, and we shall take them up in the numerical order followed in the assignment of errors.

I. The plaintiff had a right to amend the complaint at the trial for the reasons set forth by the lower court in granting leave to make the amendment, in the decision of September 17, 1897, which reads as follows:

"District Court of San Juan. First Section. *Rubert Hermanos* v. *María Luisa López et al.* In re the extinguishment of mortgage credits. Decision. During the argument of this action, the plaintiff by verbal motion asked for leave to amend the third allegation of fact of his complaint in order that it might conform to the evidence presented and admitted without objection on the part of the defendants. The latter opposed the motion. Sections 136 and 137 of the Code of Civil Procedure, in relation with section 140, permit the amendment at any time, even during the trial and the arguments and even after the verdict, if it be by jury, if the purpose thereof is to make the allegations conform to the evidence presented. This has also been recognized in the jurisprudence construing these sections. (See the following cases: *Priest* v. *Union Canal Co.*, 6 Cal., 170; *Hall* v. *Rice*, 64 Cal., 443; *Hooper* v. *Wells*, 37 Cal., 35.) The third allegation sought to be amended refers to the constitution of the mortgage of January 25, 1864, and concluded with the statement that 'this mortgage obligation aside from the satisfaction thereof by payment, is extinguished by prescription because more than 30 years have elapsed between 1872, when the last installment fell due, and the present date.' And the amendment of said paragraph reads as follows: 'This mortgage obligation has been paid and settled in full, and would furthermore be extinguished by prescription, because more than 30 years have elapsed between 1872 when the last installment fell due, and the present date. The purpose of the amendment is to set forth clearly that the mortgage in addition to having prescribed has also been paid, which had already been announced in the original complaint. Therefore, the amendment does not involve a new cause of action, because the extinction of the mortgage obligation, which is the action, having been alleged, it is sought to specify that not only does it lie by prescription but also by payment. On the other hand, the documents presented for

the purpose of establishing the payment were known to the defendants since August 25, 1895, when copies thereof were delivered to them, according to a receipt of record, and when they were presented to the court as evidence at the session of May 22 of this year, the defendants did not object to the admission thereof, but on the contrary agreed thereto. Hence, the amendment cannot now be a surprise to the defendants nor can they avoid it in order to accommodate to such evidence the allegation corresponding thereto. (See *Pomery* v. *Code Remedies,* fourth edition, p. 636, and *Chicago & G. S. Ry. Co.* v. *Jones,* 103 Ind., 386.)

"Therefore the end of the third allegation of the complaint must be harmonized with the evidence presented and admitted without objection, and in furtherance of justice. For these reasons, I order that the plaintiff be granted leave to amend the third allegation of his complaint to read as follows: 'This mortgage obligation has been paid and settled in full and would furthermore, be extinguished by prescription, because more than 30 years have elapsed between 1872 when the last installment fell due and the present date. Done in open court this 17th day of September, 1907. Pedro de Aldrey, Judge of the First Section."

II. Counsel for the appellant affirms that the lower court rendered judgment ignoring most of the documentary evidence presented and admitted. He does not allege anything specific in support of his affirmation. This Supreme Court, after having examined the evidence, does not find that it has been ignored, but that the judgment is supported by the evidence.

III. The law of the contract embodied in the deed of January 25, 1864, has not been violated, because the registry of property does not contain the record of securities transferable by indorsement or mortgage obligations to the order of Ramón Pascual, the husband of María Luisa López, and, therefore, this is not a case for the application of the provisions of the fourth paragraph of article 82 of the Mortgage Law.

IV. The mortgage credit was executed in the form in which it appeared in the registry of property, in which, as we have stated, no securities payable to bearer have been recorded, nor any documents transferable by indorsement, that is to say the

notes signed by Manuel Antonio López Martínez in favor and to the order of Ramón Pascual.

V. The mortgage debts contracted by deeds of January 25, 1864, and October 15, 1866, have been extinguished without violating the form in which they appeared in the registry of property, and, therefore, article 1157 of the former Civil Code, which is the equivalent of section 1125 of the revised Code, has not been violated.

VI. The payment was made to the persons in whose favor the mortgage obligations had been constituted or to their successors in interest.

VII. As the juridical personality of María Luisa López continued in her heirs, as it did, they could, as owners according to the register, dispose of the installments of the mortgage credit pertaining to her, assigning them to whomsoever they might see fit.

VIII. Article 77 of the Mortgage Law is not applicable to this case, in which mortgage notes payable to the order of Ramón Pascual have not been recorded in the registry, consequently there is no need of cancelling such records.

IX. Subdivision two of article 79 of the Mortgage Law far from having been violated has, in our opinion, been perfectly applied in the judgment, because the rights recorded having been absolutely extinguished, their cancellation should be ordered.

X. Article 20 of the Mortgage Law does not appear to apply to this case in any of its paragraphs, and the registrar not having made any records to secure amounts represented by securities payable to the bearer or transferable by endorsement, section 82 of the same law which is inapplicable to the case could not have been violated in the judgment.

XI. What we have just said with relation to the inapplicability of article 82 of the Mortgage Law, is to be repeated with regard to the error of law marked No. 11.

XII. The fourth paragraph of article 161 of the former Mortgage Law, which is article 153 of that now in force, could

not have been applied, because, according to the registry, the real owner of the mortgage credit was María Luisa López, or her heirs upon her death, and not the holders or indorsees of the notes which although issued to the order of Ramón Pascual, were not recorded in said registry.

XIII. Article 1857 of the former Civil Code, which is the equivalent of section 1758 of the Revised Code, enumerates the essential requisites of the contracts of pledge or mortgage, and we see nothing to show that it has been violated. According to the registry the credit was acknowledged in favor of María Luisa López, and the mortgage was constituted for the purpose of securing said credit. The credit and security belonged to the same person according to the registry, and it is so recognized in the judgment.

XIV. The indivisibility of a mortgage established by article 1860 of the former Civil Code, which is the equivalent of section 1761 of the Revised Code, has not been ignored, and far therefrom the mortgage obligations having been totally extinguished, their cancellation was ordered. Counsel for the appellant starts from the erroneous assumption that Ramón Pascual or his heirs, without the notes drawn to the order of the former having been recorded in the registry, had the right to enjoy as had the indorsees of such documents, the rights consequent to the record. It appears from the evidence that Gallart, to whom the property had been awarded, complied with the obligations which he accepted at the time of the sale of the Central San Vicente, and by virtue of this compliance the cancellation of the mortgage credits extinguished has been ordered.

XV. We do not see what influence the question of whether the firm of Rubert Hermanos is a third person as to the contract of sale, can have on the matter, because the plaintiff does not exercise any rights distinct from those of his predecessor in interest, José Gallart, and if the latter was entitled to the cancellation of the mortgages in question, it is necessary

to acknowledge the same right in his successor in interest, the plaintiff.

XVI. Errors of law which are not definitely and specifically stated cannot be discussed.

It is incumbent on the appellant to cite the provisions of law violated in order that this court may determine and decide whether or not there have been any violations of law.

In brief, the judgment rendered by the Judge of the District Court of San Juan on February 18, 1907, is not contrary to the evidence heard at the trial, nor is it contrary to law, and, therefore, the decision of said court of January 8 of last year should be affirmed and the motion of the defendants for a new trial dismissed.

*Affirmed.*

Justices Figueras, MacLeary and Wolf concurred.

Mr. Chief Justice Quiñones did not take part in the decision of this case.